UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO ARMENDARIZ-CARMONA,<br><br>                    Petitioner,<br><br>vs.<br><br>DERRAL ADAMS (Warden),<br><br>                    Respondent. | No. 1:02-cv-05926-JKS(HC)<br><br>MEMORANDUM DECISION |

Petitioner Arturo Armendariz-Carmona has filed a petition for habeas corpus under 28 U.S.C. § 2254. Petitioner is currently serving a term of 30 years to life; 25 years to life, plus five one-year enhancements under CAL. PEN. CODE § 667.5(b). Petitioner was charged with three counts: Count 1, driving under the influence causing injury to another person (CAL. VEH. CODE § 23153(a)); Count 2, driving a motor vehicle with a blood alcohol level greater than .08% causing injury to another person (CAL VEH. CODE § 23153(b)); and (3) felony "hit and run" (CAL. VEH. CODE § 20001(a). Petitioner was also charged with two prior "strikes" and six prior prison term enhancements. After jury trial, Petitioner was found guilty on all three counts and five of the prison term enhancements found true.[1] Petitioner appealed his conviction to the California Court of Appeal, which affirmed his conviction on December 14, 2000 in an unpublished written opinion. The California Supreme Court summarily denied review on February 21, 2001. Petitioner did not file a petition for *certiorari* with the U.S. Supreme Court and his conviction became final 90 days later, May 22, 2001. *See Wixom v Washington*, 264 F.3d 894, 897 (9th Cir.2001). Petitioner filed a petition for a writ of habeas corpus with the California Supreme Court on November 26, 2001, which was summarily denied without opinion or citation to authority on May 15, 2002. Petitioner timely filed his petition in this Court on July 29, 2002.

---

[1] Petitioner was sentenced to 30 years to life on Count 1. The court also imposed additional 25 years to life sentences on each of Counts 2 and 3 but stayed those sentences under CAL. PEN. CODE § 654.

The history of this case and the facts are well known to the parties and are set forth in detail in the opinion of the California Court of Appeals.  In the interests of brevity they are not repeated here.

Petitioner raises five claims in his petition.  (1) The California "three-strikes" law is unconstitutional and his sentence was disproportionate and constituted cruel and unusual punishment.  (2) Ineffective assistance of trial counsel.  (3) Illegal conviction of multiple crimes out of a single act or occurrence.  (4) Prosecutorial misconduct.  (5) Ineffective assistance of appellate counsel.  Petitioner raised his first (disproportionate sentence) and second (ineffective assistance of trial counsel) on direct appeal.  All five claims presented in the petition before this Court were also presented to the California Supreme Court in his petition for habeas corpus filed in that court.

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court, *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004), which in this case was that of the California Court of Appeal.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  When there is no reasoned state court decision denying an issue presented to the state court and  raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir.2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir.2005) (per curiam).

Claim 1 (Disproportionate Sentence).

First, the United States Supreme Court has upheld California's "three-strikes" law as constitutional. *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Ewing v. California*, 538 U.S. 11 (2003). Thus, on that issue, Petitioner's argument is foreclosed.  To the extent Petitioner alleges a violation of the California Constitution, it is beyond the purview of this Court's jurisdiction to review the interpretation of state law.  This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (Citations and internal quotation marks omitted)).

Although Petitioner received a severe sentence and the Eighth Amendment prohibits sentences that are grossly disproportionate to the crime, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Solem v. Helm,* 463 U.S. 277, 289-90 (1983) (internal alternations and emphasis omitted).  The Ninth Circuit has held that "'only extreme sentences that are grossly disproportionate to the crime' violate the Eighth Amendment." *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994) (quoting *United States v. Bland,* 961 F.2d 123, 129 (9th Cir.1992). To determine proportionality, a court must examine: "(1) 'the gravity of the offense and the harshness of the penalty'; (2) 'the sentences imposed on other criminals in the same jurisdiction'; and may include (3) 'the sentences imposed for commission of the same crime in other jurisdictions.'" *Cacoperdo,* 37 F.3d at 507 (quoting *Solem,* 463 U.S. at 290-92).  Balanced against the proportionality principle is the corollary principle that the determination of prison sentences is a legislative prerogative not within the province of the courts. *Rummel v. Estelle*, 445 U.S. 263, 275–76 (1980).  Also, as noted in 1991, the decisions of the Supreme Court regarding proportionality to that time had not always been clear or consistent in all respects and its precise contours unclear. *Harmelin v. Michigan*, 501 U.S. 957, 997–98 (1991) (Kennedy, J. concurring).  It is against this backdrop of the law as it existed at the time the California courts rendered their decisions that those decisions must be examined.

In disposing of his argument that his sentence was unduly harsh and constituted a disproportionate sentence constituting cruel and unusual punishment, the Court of Appeal held:

### Imposing a Sentence of 30 Years to Life Did Not Represent Cruel and Unusual Punishment

Finally, Carmona argues imposing a sentence of 30 years to life under the three strikes law for violating section 23153 constituted cruel and unusual punishment, particularly since "only extremely minor injuries" resulted from the present crime. He contends the three strikes law is unconstitutional on its face and as applied to him.

As noted above, the purpose of the three strikes law is not to subject a criminal defendant to a long sentence merely on the basis of the latest offense. Rather, the purpose is to punish recidivist behavior. In *People* v. *Cooper* (1996) 43 Cal.App.4th 815, 820-830, this court rejected attacks on the constitutionality of the three strikes law similar to those made by Carmona. We find our holding in *Cooper* controlling in this case.

And when we survey the length of Carmona's criminal record, we cannot say his present sentence is grossly disproportionate to his criminality, which has gone unabated for over 20 years, despite five previous prison terms. Nor do we accept Carmona's assertion he currently stands convicted of "relatively minor offenses." As the trial court noted, the drunken driving here resulted in a serious crime, one that had potential for grave, even fatal, consequences. That the victim was not hurt worse can be attributed to his youthful alertness and agility, and good fortune, not to any inherent lack of danger in the unheeding actions of Carmona.

Under these circumstances, imposition of a sentence of 30 years to life is neither cruel nor unusual punishment under either the state or federal Constitutions.

Petitioner had an extensive prior criminal history of felony convictions spanning nearly 20 years.  The record shows seven felony convictions with sentences totaling 17 years and four months: (1) May 1979 – Residential Burglary (CAL. PEN. CODE § 459);[2] (2) January 1981 – Grand Theft (CAL. PEN. CODE § 487.2);[3] (3) September 1984 – Residential Burglary (CAL. PEN

---

[2] The record indicates this conviction was for an offense that occurred while Petitioner was a juvenile.  The record also shows that Petitioner also already had a problem with alcohol.  Petitioner was committed to the custody of the California Youth Authority for a period of three years.  Two other burglary charges were dismissed in exchange for Petitioner's guilty plea.

[3] Sentenced to three years imprisonment after revocation of probation.

CODE § 459);[4] (4) March 1986 – Possession of a Deadly Weapon (CAL. PEN. CODE § 4502);[5] (5) October 1988 – Burglary (CAL. PEN. CODE § 460.2);[6] (6) January 1992 – Petty Theft with prior convictions (CAL. PEN. CODE § 666);[7] and (7) March 1994 – Petty Theft with prior conviction (CAL. PEN. CODE § 666).[8]   The record also shows that during the 10-year period preceding the offense in the case at bar Petitioner's parole was revoked at least three times: April 1990; January 1994; and July 1998.   Indeed, Petitioner was on parole at the time he committed the offense for which he was convicted in this case.

Although a violation of CAL. VEH. CODE § 23153 may not be considered a crime of violence, *see Leocal v. Ashcroft*, 543 U.S. 1, 11–13 (2004) and *United States v. Trinidad-Acquino*, 259 F.3d 1140, 1146 (9th Cir.2001) (construing the statutory definition of a crime of violence in 18 U.S.C. § 16), drunk driving is a nationwide problem, *Leocal*, 543 U.S. at 13.   For a first offense, absent application of California's "three strikes" law, Petitioner would have been sentenced to not less than 90 days and not more than one year.[9] CAL VEH. CODE § 23554.   For his conviction for felony hit and run, Petitioner would have received a sentence of not more than one year. CAL. VEH. CODE § 20001(b).   Thus, the issue becomes whether a sentence 25 times as long is, under all the facts and circumstances, sufficiently disproportionate to constitute one of those rare and an unusual cases falling within the proscription of the Eighth Amendment.

Initially the Court looks to *Rummel*, *Solem*, and *Harmelin* for guidance.   In *Rummel*, the Supreme Court rejected the argument that a life sentence with possibility of parole upon conviction of obtaining $120.75 by false pretenses violated the Eighth Amendment where the defendant's criminal history consisted solely of the fraudulent use of a credit card to obtain $80 worth of goods and passing a forged check in the amount of $28.36.   In *Solem* the Supreme Court found a sentence of life without possibility of parole upon conviction of uttering a no

---

[4] Sentenced to four years imprisonment.

[5] Sentenced to two years imprisonment.

[6] Sentenced to two years imprisonment.

[7] Sentenced to 16 months imprisonment.

[8] Sentenced to three years imprisonment with a one year enhancement for a total of four years.

[9] The Information charges a prior violation of CAL. VEH. CODE § 23152 ("straight" driving under the influence), however the jury found that to be untrue.

account check for $100 based on a criminal history of seven nonviolent felonies violated the Eighth Amendment.  In *Harmelin*, the Supreme Court upheld against an Eighth Amendment challenge a mandatory life sentence without possibility of parole upon conviction for possession of more than 650 grams of cocaine  without consideration of mitigating factors, such as fact the defendant had no prior felony convictions.

The Court has also compared this case to three decisions of the Ninth Circuit: *Reyes v. Brown*, 399 F.3d 964 (9th Cir.2005); *Rios v. Garcia*, 390 F.3d 1082 (9th Cir.2004); and *Ramirez v. Castro*, 365 F.3d 964 (9th Cir.2004).

In *Rios* the Ninth Circuit upheld a sentence of 25 years to life under California's "three strikes" law where the defendant was convicted of felony petty theft where he struggled with the loss prevention officer and tried to avoid apprehension for the petty theft and in light of the fact that because his cohort used a knife his two prior robbery "strikes" involved the threat of violence.

In *Ramirez* the defendant was sentenced  to 25 years to life under California's "three strikes" law for his third shoplifting offense.  The Ninth Circuit, in a 2 –1 decision, found that his sentence was grossly disproportionate to the crimes committed.  The core conduct of petitioner's third offense, his nonviolent shoplift of a $199 VCR, was a misdemeanor petty theft punishable by up to six months in county jail and petitioner's prior criminal history was comprised solely of two convictions for second-degree robbery obtained through a single guilty plea, for which his total sentence was one year in county jail and three years probation.

In *Reyes* the defendant was convicted for perjury for filing a false driver's license application and sentenced to 26 years to life under California's "three strikes" law.  The Ninth Circuit in a 2 – 1 decision remanded the case for a determination of whether the defendant's prior armed robbery offense was a crime against a person or involved violence, and thus justified his extreme sentence for perjury; neither perjury offense of falsifying driver's license application nor petitioner's other prior conviction as juvenile for an apparently nonviolent residential burglary threatened grave harm to society for purposes of justifying extreme sentence.  The *Reyes* majority also noted that although Reyes was convicted for perjury, a felony, the fact that the California Legislature also provided that the specific act of which Reyes was convicted, a

false statement on a driver's license, was a misdemeanor indicated his offense "is viewed by society as among the less serious offenses." 399 F.3d at 967 n. 4.

When measured against the facts of this case, *Reyes–Rameriz–Rios* are not particularly illuminating or helpful.  Although not technically a crime of violence, it is beyond cavil that the offense for which Petitioner was convicted and sentenced, driving under the influence, posed a significant risk of causing serious bodily injury or death to a third person.  Also, although not crimes of violence, Petitioner's criminal history shows that he is a hard-core career criminal, a recidivist whose prior incarcerations, which, together with his periods on parole, consumed his entire adult life, clearly shows that Petitioner is "incapable of conforming to the norms of society as established by its criminal law," a legitimate penological goal the Court must take into consideration.  *See Ewing*, 538 U.S. at 29 (plurality), *Rummel*, 445 U.S. at 276.

The California Court of Appeals clearly considered the appropriate factors in determining that Petitioner's sentence did not constitute cruel and unusual punishment.  In light of the Supreme Court decisions in *Rummel* and *Harmelin*, this Court can not say, based upon the facts presented to it, that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief under Claim 1.

Claim 2 (Ineffective Trial Counsel).

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*.  Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable

probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

In his direct appeal Petitioner addressed but a single lapse of trial counsel, *i.e.*, that during argument to the jury trial counsel referred to the driver of the car as "him" (the defense being that Petitioner's girl friend, not Petitioner, was the driver).  In disposing of that argument the Court of Appeal held:

### Carmona Did Not Suffer Ineffective Assistance of Counsel

Carmona's defense at trial was that his girlfriend, Benay, was driving the Cadillac, not he. However, during closing argument, Carmona's attorney offered the following:

"[Grimley] sees the car, and he sees him go through. He saw the car. He comes back on the street, still in a cloud of dust. [¶] He's three hundred forty feet away .... That's not where he can see him, but he's three hundred forty feet away when he's getting out of the cloud of dust and getting back on the street.

"He follows him. And he can't be following them as closely as he said.. . .

"He can't be following all that close, ... So he was a little ways behind him."

In this way, Carmona contends, his counsel argued-against him at trial, placing him, rather than Benay, behind the wheel. By thus undermining his defense, the statement violated his constitutional rights to effective assistance of counsel and due process of law. We are not persuaded.

To establish ineffective assistance of counsel, an appellant must "establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. [Citation.]." (*People* v. *Bolin* (1998) 18 Cal.4th 297, 333 .) "[P]rejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (*Ibid.,* citing *Strickland* v. *Washington* (1984) 466 U.S. 668,694, and *People* v. *Ledesma* (1987) 43 Cal.3d 171, 217-218.)

We have difficulty finding ineffective assistance in the juxtaposition of pronouns in five or six lines of a thoroughgoing argument filling almost 20 pages of record. Carmona himself characterizes the words as "a lapse," and we think it likely the jury considered it similarly, if they considered it at all.

However, we need not belabor the significance of a few phrases, since Carmona cannot show resulting prejudice on this record. Given the evidence against Carrnona, a different outcome was not reasonably likely in this matter. One eyewitness decidedly placed Carmona in the driver's seat. This witness just as

decidedly placed a female matching Benay's description in the passenger seat, and not in the driver's seat. On finally stopping, Carmona was observed to be crawling across the front seat to exit the passenger door, a journey that would seem necessary only had he been in the driver's seat. The Cadillac was registered to Carmona, and police found the keys to the vehicle in his front pants pocket.

Balanced against the evidence detrimental to Carmona was very little. Benay and Connie premised their story upon Carmona's entering the moving car through the sunroof, which was open only approximately four to five inches. The record reflects, and the jurors would have been able to observe for themselves, that Carmona was approximately 5 feet 11 inches tall and weighed 170 pounds. Carmona's entire defense thus rested on the jury's accepting an assertion so unlikely physically as to be inherently incredible.

Given the state of the evidence, a differing outcome in this matter was not reasonably probable. Absent prejudice, then, Carmona cannot be said to have suffered ineffective assistance of counsel.

This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

However, inquiry does not end here.  In his petition to this Court as well as his habeas petition to the California Supreme Court, Petitioner recites a whole litany of items he alleges trial counsel failed to do.  In particular Petitioner complains about the lack of investigation into and cross-examination of witness with respect to the issue of whether the brakes malfunctioned.[10]  He also complains that trial counsel did not interview the principal defense witness, Benay

---

[10] Interestingly, in both his habeas petition to the California Supreme Court and before this Court Petitioner in one breath claims his defense was two-fold: he was not driving *and* the brakes malfunctioned and in another that he was not the driver was his "entire defense."  How the condition of the brakes is relevant to his defense of the charges of which stood accused is unexplained and inexplicable.  If he was not driving, whether the brakes malfunctioned or not was irrelevant.  On the other hand, if he was driving, whether the brakes failed or not Petitioner was driving while intoxicated, which resulted in bodily injury.

Tiscareno, who the defense asserted was the driver.  What this might have accomplished, given the inherent implausibility of her testimony, is left to surmise and speculation.

Petitioner also criticizes trial counsel's cross-examination of a principal prosecution witness, Dennis Grumling, asserting that he should have asked whether he wore glasses, had been drinking, or was coming from work and was, perhaps, exhausted.[11]  Petitioner also points to the fact that Mr. Grumling had difficulty in seeing a chart in the court room, therefore, according to Petitioner, trial counsel should have questioned his ability to see who was in the vehicle from a greater distance.  How, given the difference in the settings and the obvious difference in the size of chart in a courtroom and a person in a vehicle, this raises a question as to the witnesses sight is a mystery Petitioner leaves unsolved.  A review of Mr. Grumling's testimony, including cross-examination, reveals that defense counsel thoroughly cross-examined him on every inconsistency between his testimony at the preliminary hearing and that at the trial.  Even assuming that it might have been productive to have asked the witness those questions,[12] it was, at best, tangential to the credibility of the testimony.

Petitioner also complains that trial counsel was demeaning of defense witnesses, *e.g.*, referring to them in closing argument as being "dumber than rocks."  A review of the comments made, taken in context, clearly indicates they were made to convince the jury that the two witnesses were too unsophisticated or unintelligent to fabricate their testimony.  Given, as the California Court of Appeal noted, the inherent implausibility of their testimony concerning how Petitioner entered the vehicle, trial counsel obviously made a tactical decision in an attempt to make them credible.  *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.  Indeed, the Supreme Court admonished in *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted):

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or

---

[11] Mr. Grumling testified that he observed the car before the accident and that, although he could not see their faces, the person sitting in the passenger seat was a female.  He further testified that when he first observed Petitioner's vehicle after it stopped, he observed the female passenger outside the vehicle with the passenger door open and Petitioner crawling out through the passenger side door.

[12] Every lawyer who has ever tried a case has looked back at some later time and wondered what other questions might or even, perhaps, should have been asked.

MEMORANDUM DECISION
*Armendariz-Carmona v. Adams*, 1:02-cv-5926-JKS          10

adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Petitioner also complains that trial counsel did not object to an admonition to the jury concerning the testimony of a defense witness that corrected her testimony that she had been in court in which there had been an earlier acquittal in the case.  The trial judge informed the jury:

I do want to clear up one thing, though, that one witness testified to yesterday, get it cleared up now while we think about it, that is that Ms. Garcia had testified that she had been in court previously when the defendant was acquitted.  That is not correct.  I don't know where she was or what she was doing, because this case has never gone to trial.  She was not in court at any time the defendant was acquitted.  This is the first trial on this particular case with this defendant.

Petitioner does not elaborate on the nature of the objection that trial counsel could have made to the admonition.  Even if it had the effect of making the witness appear to be a liar, as Petitioner contends, the witness was unmistakably mistaken and the truth was evident from the record, of which the court properly took judicial notice.

Finally, Petitioner alleges that trial counsel did not adequately cross-examine the eight-year old child whose injury formed the basis for the CAL. VEH. CODE § 23153 charge of causing "bodily injury to another person."  Specifically, Petitioner argues that trial counsel should have delved deeper into whether the child suffered earlier injuries or fell while skateboarding, which, instead of being struck by the vehicle, might have caused his injuries.  The record indicates that there was no cross-examination.  The Court has reviewed the testimony of the child.  Distilled to its essence, his testimony was that: (1) he was sitting on a bench when he saw the car coming towards him; (2) he got up and attempted to get out of the way, slipped on the wood and fell on his back; and (3) suffered a scape on his elbow and his back.  He also testified that he thought he

had fallen on some stuff from the bench and, further, that he fallen and hurt himself before from skateboarding.  Petitioner fails to make any significant showing of what cross-examination might have established.  As any experienced trial counsel knows, cross-examination of a young child is, at best, a sensitive endeavor and must be approached with extreme caution lest one antagonize a jury.  No evidence in the record even remotely suggests that the testimony of the child was other than truthful.  Of particular import is the testimony that the child fell while attempting to get away from the car that was not only coming down on him but did, in fact, hit the bench upon which he had been sitting.  It is more likely than not that trial counsel decided the best tactic was to leave well enough alone.

The Court has considered Petitioner's other points and finds them to be either *de minimis* or unsupported by the record.  Having reviewed Petitioner's contentions regarding the adequacy of his defense counsel at trial, the Court must conclude that, even if they constituted errors in judgment, they do not rise to the level of incompetence or have the prejudicial effect, either individually or cumulatively, of sufficient magnitude to satisfy the *Strickland-Hill* test. Petitioner is not entitled to relief under Claim 2.

Claim 3 (Multiple convictions and punishments from a single act).

In his habeas petition filed in this Court as well as his petition to the California Supreme Court, Petitioner argues that his conviction of on Counts 1 (CAL VEH. CODE § 23153(a) – driving under the influence and causing injury to another person) and 2 (CAL. VEH. CODE § 23153(b) – driving with a blood-alcohol level in excess of 0.08% and causing injury to another person) of the information constituted an impermissible conviction and punishment of two crimes arising out of the same act under the Eighth and Fourteenth Amendments to the U.S. Constitution.

Under California law, a person may be convicted under both 23153(a) and (b).  However, he or she may not receive multiple punishments when there is a single act or an indivisible course of conduct. CAL. PEN. CODE § 654; *People v. Oates*, 88 P.3d 56, 64 (Cal.2004).  In the case where, as here, the defendant is convicted of both § 23153(a) and (b), the proper procedure is to stay execution of the sentence on the conviction for violation of § 23153(b). *See People v. Duarte*, 207 Cal.Rptr. 615, 621 (Cal.App.1984).  That is the procedure followed by the California courts in the case at bar, *i.e.*, the sentencing court stayed the sentence imposed on Count 2.

Petitioner does not cite and independent research by the Court did not discover any federal law, as established by the U.S. Supreme Court, that CAL. PEN. CODE § 654 as applied in this case, violated.[13/]  There being no federal question presented, Petitioner is not entitled to relief under Claim 3. 28 U.S.C. § 2254(d); *Estelle v. McGuire, supra.*

Claim 4 (Prosecutorial misconduct)

On a petition for a writ of habeas corpus, the standard of review for a claim of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974)).  Thus, to succeed, Petitioner must demonstrate that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly,* 416 U.S. at 643.  Under "the narrow [standard] of due process," in contrast to the "broad exercise of supervisory power," relief is not appropriate in situations where, for example, the prosecutor's conduct "did not manipulate or misstate the evidence" or "implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Darden,* 477 U.S. at 181–82.  It is axiomatic that in a criminal trial both counsel have a duty and obligation to refrain from (1) interjecting their personal beliefs in the presentation of their respective cases and (2) making unfounded and inflammatory remarks on the opposing advocate. *United States v. Young*, 470 U.S. 1, 7–9 (1985).  However, as the Supreme Court also noted in *Young*, "[t]he line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone." 470 U.S. at 7.

Petitioner argues that the prosecutor committed prejudicial misconduct by references to the differences in the age of Petitioner (38) and a principal witness (17) and attempts to establish the existence of a relationship between them.  Petitioner also complains that the prosecutor impermissibly vouched for its witnesses and implied that the defense witnesses were liars.  For the reasons that follow, the Court finds Petitioner's arguments to be without merit.

---

[13/] The Court notes that the Ninth Circuit held that application of § 654, as amended in 2000, could not be applied to an offense committed prior to the effective date of that amendment as it would violate the *ex post facto* clause of the U.S. Constitution. *Williams v. Roe*, 421 F.3d 883, 886-87 (9th Cir.2005).  That infirmity is not present in this case.

MEMORANDUM DECISION
*Armendariz-Carmona v. Adams*, 1:02-cv-5926-JKS

First, Petitioner does not clearly articulate just how the references to the age difference between Petitioner and the principal defense witness inflamed the jury or caused it to be prejudiced against him.  Certainly, the prosecution attempted to establish the existence of a relationship and the nature of that relationship as a means to undermine her credibility.  That the prosecutor attempts to establish a motive for the witness to be less than truthful is not prosecutorial misconduct.

A prosecutor improperly vouches for a witness where the prosecutor impresses on the jury the prosecutor's own belief in the witness's credibility. *See United States v. Edwards,* 154 F.3d 915, 921 (9th Cir.1998).  However, it is also recognized that it "is neither unusual nor improper for the prosecutor to voice doubt about the veracity of a defendant who has taken the stand," *United States v. Birges,* 723 F.2d 666, 672 (9th Cir.1984), and that, in "instances of flatly contradictory testimony on important issues ... it [is] proper for the government to argue that the jury ought not to believe the [defendant's] version," *United States v. Molina,* 934 F.2d 1440, 1445 (9th Cir.1991). In *Molina,* in which an informant's testimony conflicted directly with the defendant's testimony on "important" issues, the Ninth Circuit approved as reasonable a prosecutorial closing far stronger than the one at issue here because "the inference [was] unavoidable that 'somebody is lying.'" *Id.*

On the claim that the prosecutor improperly vouched for his witness, Petitioner points to the following:

> Now, what about Mr. Grumling?
>
> How about Mr. Grumling?  I think he's a prime example of why people don't want to get involved in situations like this, because you are going to get grilled and you're going to get accused of things.

And:

> Why would Mr. Grumling lie about these things?  He has no motive.  he was actually doing a good thing that day.  That doesn't change the fact that defendant was driving.

This hardly constitutes vouching for the veracity of Mr. Grumling by either placing the prestige of the government behind the witness or indicating that evidence not presented to the jury supported his testimony. *See United States v. Roberts*, 618 F.2d 530, 533 (9th Cir.1980).  It does

nothing more than provide the jury with a basis upon which to judge for themselves the veracity of the witness.

Petitioner also complains about the fact that the prosecutor referred to the testimony of the defense witnesses as being "not credible," "not reasonable," "ridiculous," and "story doesn't make sense." He also complains that the prosecutor impugned the integrity of defense counsel. "Mr. Lukehart is a good lawyer. He's [*sic*] takes what he's got and works well with it. Unfortunately, this is like trying to sell a heater in the Sierra on a hot day."

What Petitioner fails to grasp is that, although a prosecutor, as the representative of the government and the people must strive not just for convictions but justice, a criminal trial is still an adversarial process. Nearly three-quarters of a century ago, the U.S. Supreme Court recognized that the adversary system permitted the prosecutor to "prosecute with earnestness and vigor, indeed he should do so" and although "he may strike hard blows, he is not a liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). In this case, contrary to Petitioner's arguments, even if the jury accepted all the inferences that Petitioner asserts the prosecutor intended flow from his comments,[14/] the prosecutor did not strike any foul blows. His conduct fell well within the permissible parameters of vigorously prosecuting the case and did not cross over the line into the area of improper advocacy. Petitioner is not entitled to relief under Claim 4.

Claim 5 (Ineffective assistance of appellate counsel).

Petitioner's claims of inadequate assistance of appellate counsel are essentially his failure to raise the additional ineffective assistance of counsel issues (Claim 2) and the issues of multiple punishments for a single act (Claim 3) and prosecutorial misconduct (Claim 4) raised in the petition before the California Supreme Court and this Court. Inasmuch as the Court has determined that those issues are without merit, the failure of appellate counsel to raise them did not constitute ineffective assistance of counsel. *See Jones v. Barnes*, 463 U.S. 745, 751–52 (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir.1989) (holding that appellate

---

[14/] The Court notes that Petitioner's ideas of what the prosecutor was inferring is nothing more than sheer speculation unsupported by any facts in evidence.

MEMORANDUM DECISION
*Armendariz-Carmona v. Adams*, 1:02-cv-5926-JKS              15

counsel's failure to raise a weak issue did not constitute ineffective counsel).  Petitioner is not entitled to relief under Claim 5.

Accordingly, because Petitioner is not entitled to relief under any claim asserted,

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).  All federal constitutional issues properly raised in the petition were either addressed by the California Court of Appeal in its decision or deemed addressed by the California Supreme Court in denying Petitioner's petition for habeas relief before that court and no reasonable jurist could find that those decisions were "objectively unreasonable."

The Clerk of the Court shall enter final judgment accordingly.

Dated:  September 20, 2007.

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge